560 So.2d 1162 (1990)
Michael MANFREDO, Petitioner,
v.
EMPLOYER'S CASUALTY INSURANCE COMPANY, Workers' Compensation Lienholder, Respondent.
No. 74275.
Supreme Court of Florida.
April 26, 1990.
*1163 Theodore R. Dempster of Schwartz, Weinstein & Mopsick, North Miami Beach, for petitioner.
Phillip D. Blackmon of Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A., Miami, for respondent.
OVERTON, Justice.
This cause is before us on petition to review Employer's Casualty Insurance Co. v. Manfredo, 542 So.2d 1365 (Fla. 3d DCA 1989). It concerns the appropriate method of computing a workers' compensation insurer's equitable distribution from a settlement received by an employee from a third-party tortfeasor under section 440.39(3)(a), Florida Statutes (1983). The Third District Court of Appeal applied our recent decision in Nikula v. Michigan Mutual Insurance, 531 So.2d 330 (Fla. 1988), and held that the insurer, which, under section 440.39(3)(a), had a lien on Manfredo's settlement proceeds, is entitled to an equitable distribution amounting to 32.7% of the benefits it has already paid Manfredo and is entitled to reduce future benefit payments to Manfredo by 32.7%. The district court certified to us the following question as one of great public importance:
Has the Supreme Court's opinion in Nikula v. Michigan Mutual Insurance Co., 531 So.2d 330 (Fla. 1988), implicitly overruled Brandt v. Phillips Petroleum Co., 511 So.2d 1070 (Fla. 3d DCA 1987) and the reasoning therein?
542 So.2d at 1367. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we answer the certified question in the affirmative and approve the decision of the district court of appeal.
Manfredo was injured when he fell from a doorway located on an end wall of a shopping center and dropped approximately twelve-and-one-half feet to the pavement below. Manfredo was an employee of the construction company which had built the shopping center, and he had been instructed to proceed to the roof of a store to check roof flashing and to caulk areas of the roof needing caulking. Manfredo requested directions to the roof from employees at the store and was directed up a steel ladder. He climbed the ladder, went through a doorway into a machine room, and approached another doorway on the opposite wall. There were no signs or other devices to alert him to the fact that the doorway opened to the exterior of the building. Believing the doorway led to the roof, Manfredo proceeded through the doorway and suffered serious, permanent injuries from his fall. He brought a third-party tortfeasor action against the architect, the owner of the building, and the lessee of the building. He has regularly received workers' compensation benefits, and, at the time of the district court of appeal proceeding, he had received $44,465.05. The workers' compensation insurer filed a notice of lien for payment of compensation and medical benefits pursuant to section 440.39(3)(a), Florida Statutes (1983).
Manfredo settled his claim against the third-party tortfeasors for $900,000, and the workers' compensation insurer moved for equitable distribution of its lien on the settlement proceeds. The primary issue for resolution is the mathematical formula which should be utilized in computing equitable distribution under section 440.39(3)(a), Florida Statutes (1983). That statute states, in pertinent part:
Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, which notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's *1164 fees for the plaintiff's attorney. In determining the employer's or carrier's pro rata share of those costs and attorney's fees, the employer or carrier shall have deducted from its recovery a percentage amount equal to the percentage of the judgment which is for costs and attorney's fees. Subject to this deduction, the employer or carrier shall recover from the judgment, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, 100 percent of what it has paid and future benefits to be paid, unless the employee or dependent can demonstrate to the court that he did not recover the full value of damages sustained because of comparative negligence or because of limits of insurance coverage and collectibility.
(Emphasis added.)
In its order on equitable distribution, the trial court, relying upon the Third District Court of Appeal's decision in Brandt v. Phillips Petroleum Co., 511 So.2d 1070 (Fla. 3d DCA 1987), acknowledged Manfredo's gross settlement of $900,000, determined that the full value of the claim was $1,500,000, and thus found that a comparative negligence factor of 40% should apply. The parties stipulated that the amount of legal fees and costs was $409,500.[1] The trial court then calculated that the ratio of the stipulated fees and costs to the gross amount of the settlement was 45.5%. It then added the two ratios, the 45.5% ratio of fees and costs to gross and the 40% comparative negligence ratio, to yield a figure of 85.5%. It then subtracted this figure from the insurer's 100% lien to arrive at a figure of 14.5%, which it determined to be the percentage of benefits already paid that the insurer is entitled to recover from Manfredo, and the percentage by which the insurer is entitled to reduce future benefit payments.
The trial court's formula would, in certain instances, result in the workers' compensation carrier's not sharing in any of the settlement funds. Under this formula, an employee's comparative negligence could totally eliminate any equitable distribution that the workers' compensation carrier could receive, assuming the fees and costs percentage remains constant. If Manfredo's comparative negligence were 54.5% or greater, then the carrier in this instance would receive nothing, irrespective of how much in actual dollars Manfredo were to receive from third-party claims.[2] Further, an employee would always be able to keep more of his recovery by showing a greater degree of comparative negligence or fault on his part.
On appeal, the Third District Court of Appeal reversed. It applied our recent decision in Nikula and found that the workers' compensation carrier is entitled to 32.7% of past and future benefits paid. The district court arrived at this figure by computing the ratio of the net settlement of $490,500 ($900,000 minus $409,500 for attorney's fees and costs) to the total value of Manfredo's third-party claim of $1,500,000.[3] In Nikula, we rejected a formula that had the same effect as the one utilized by the trial court below. We noted that if the controlling factor is the percentage of comparative negligence, rather than the ratio of settlement amount to full value, the formula will produce irrational results which will be inconsistent with the legislative intent. In that opinion, we explained:
First, attempting to determine the actual percentage of comparative negligence after settlement or judgment introduces an artificial issue which need not be litigated. In the lien proceedings, it is only necessary to determine the presence of comparative negligence and, if present, the full value of damages. The actual amount of the settlement or judgment speaks for itself. Second, in suing the tortfeasor, the worker and compensation carrier share a common interest in obtaining the full value of damages *1165 by minimizing comparative negligence. This common interest will be seriously undermined if they anticipate that the worker will later benefit from adopting the contradictory position of asserting maximum comparative negligence. Third, if the settlement amount is above or below the reduced value attributable to the percentage of comparative negligence, one or the other of the parties would receive an undeserved windfall.
531 So.2d at 331-32 (emphasis added). In construing section 440.39(3)(a), Florida Statutes (1981), we held that "the carrier's lien shall be based upon the ratio of settlement amount to full value of damages." Id. at 330-31. Although Nikula concerned the 1981 version of the statute, in a footnote to that opinion, we stated:
The statute was amended in 1983 to take into consideration the worker's expenses in pursuing the third-party claim. The controlling factor for settlements involving comparative negligence under the amended version is the ratio of net recovery to full value of damages.
Id. at 332 n.[*].
We find that the mathematical formula utilized by the district court in the instant case properly applies Nikula and that the district court's analysis correctly reflects the intent of the legislature in both the 1981 and 1983 acts. The fairness of the formula to both the employee and the carrier can be illustrated by varying only the comparative negligence factor. In these examples, we take the $1,500,000 judicially determined full value of the claim, assume that the attorney's fee percentage remains constant at 40% of the amount of the recovery and that costs remain constant at $49,500, and vary only the employee's percentage of comparative negligence. The resulting calculations of the ratio of the net settlement to the total value of the claim show that the formula works properly and is fair to both the employee and the insurer. For example, if there is no comparative negligence by the employee, the net recovery would be $850,500, and the insurer would be entitled to a 56.7% lien for the moneys it paid ($1,500,000 total settlement minus $649,500 in attorney's fees and costs = $850,500 net settlement divided by $1,500,000 = 56.7%). On the other hand, if the employee is 80% comparatively negligent, the net recovery would be $130,500, and the insurer would be entitled to receive only 8.7% of the moneys it paid (20% of $1,500,000 is $300,000 minus $169,500 in attorney's fees and costs = $130,500 net settlement divided by $1,500,000 = 8.7%).
We note that, using the ratio of net recovery to the judicially determined full value of the third-party claim, the carrier in this case is entitled to 32.7% of the amounts previously paid to Manfredo, and the carrier may deduct 32.7% from future payments to Manfredo. Accordingly, for the reasons expressed, we approve the decision of the district court of appeal and disapprove Brandt to the extent it conflicts with this decision.
It is so ordered.
McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, C.J., concurs in result only with an opinion.
EHRLICH, Chief Justice, concurring in result only.
The facts in this case are significantly different from those in Nikula v. Michigan Mutual Insurance Co., 531 So.2d 330 (Fla. 1988). In Nikula, the trial judge specifically found that the employee was ninety percent comparatively negligent and he utilized this finding of fact in his computations. In the instant case, there was no finding with respect to comparative negligence, and without any such finding, I have no quarrel with the manner in which the Court has resolved this case. In Nikula, in which I dissented, the Court concluded that the carrier's lien shall be based upon the ratio of settlement amount to full value of damages, completely and totally ignoring the statutory mandate that
the employer or carrier shall recover from the judgment, after costs and attorney's fees incurred by the employee or dependant in that suit have been deducted, 100 percent of what it has paid and *1166 future benefits to be paid, unless the employee or dependant can demonstrate to the court that he did not recover the full value of damages sustained because of comparative negligence or because of limits of insurance coverage and collectibility.

§ 440.39(3)(a), Fla. Stat. (1983) (emphasis added). The statutory mandate with respect to comparative negligence is of no significance here because there was no such finding.
I note the examples given in the court's opinion dealing with circumstances where there is comparative negligence. Maj. op. at 1165. The examples demonstrate that where there is comparative negligence the insurer's recovery is lessened accordingly, which is the thrust of my dissent in Nikula. I find it difficult to reconcile the examples with the finding that "the instant case properly applies Nikula."
NOTES
[1] The record reflects that attorney's fees were 40% of the recovery, or $360,000, and that costs were $49,500 (because Manfredo's attorney absorbed half the costs).
[2] 100% - (45.5% attorney's fees and costs ratio + 54.5% comparative negligence ratio) = 0%.
[3] $900,000 - 409,500 = $490,500 ÷ $1,500,000 = 0.327.