793 So.2d 912 (2001)
Brian JONES, et ux., Petitioners,
v.
ETS OF NEW ORLEANS, INC., Respondent.
No. SC96287.
Supreme Court of Florida.
August 30, 2001.
*913 L. Barry Keyfetz of Keyfetz, Asnis & Srebnick, P.A., Miami, FL, and Gerald R. Herms, Tampa, FL, for Petitioners.
Robert A. LeVine of Newman, LeVine & Metzler, P.A., Tampa, FL, for Respondent.
Joseph H. Williams of Troutman, Williams, Irvin, Green & Helms, P.A., Winter Park, FL, for The Academy of Florida Trial Lawyers, Amicus Curiae.
PARIENTE, J.
We have for review the Second District Court of Appeal's decision in ETS of New Orleans, Inc. v. Jones, 738 So.2d 958 (Fla. 2d DCA 1999), which expressly and directly conflicts with the opinion of this Court in Baughman v. Aetna Casualty & Surety Co., 78 So.2d 694 (Fla.1955). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. Because we conclude that the term "court costs" as used for purposes of calculating equitable distribution of workers' compensation liens is not limited to "taxable costs," we quash the Second District's decision.

FACTS
Brian Jones, the claimant in this workers' compensation case, was employed by Ed Smith Steel Erectors, Inc. While on the jobsite, Jones had to walk along the eight-inch-wide top of a partially constructed concrete block wall, through which a four-foot-high segment of PVC pipe protruded. The pipe had been installed by Lawhorn Plumbing, which was another subcontractor on the project. As Jones grabbed the pipe (which was two inches in diameter) to swing around it, the pipe broke and Jones fell eighteen feet to the concrete floor below. As a result of this fall, Jones suffered compression fractures and a broken ankle. His permanent injuries resulted in a whole person disability rating of twenty-two percent.
At the time of Jones' accident, ETS of New Orleans ("ETS") provided the workers' compensation insurance for Jones' employer. ETS eventually paid Jones $124,460.12 in workers' compensation benefits. Later, however, Jones filed a third-party tort claim against Lawhorn Plumbing for damages allegedly resulting from its negligence. ETS filed a workers' compensation lien in that suit. Jones and Lawhorn Plumbing ultimately settled for $50,000, and Jones then filed a petition in circuit court for equitable distribution of the settlement proceeds in order to satisfy ETS's workers' compensation lien. After an evidentiary hearing, the trial court awarded ETS $5,102.86.
On appeal to the Second District, ETS asserted, among other things, that the trial court overstated the amount of costs that Jones was entitled to subtract from his settlement before determining the pro rata share of the award that ETS would receive.[1]See id. at 959. In particular, ETS *914 argued that the trial court improperly included in its final order of equitable distribution all costs incurred by Jones rather than only taxable costs. The Second District agreed with ETS, concluding that the term "court costs" within the meaning of section 440.39(3)(a), Florida Statutes (1997), means "taxable costs" instead of "all costs." See ETS, 738 So.2d at 959. Accordingly, the Second District reversed and remanded on this issue. See id. at 960.

ANALYSIS
The question before us in this case is a narrow one: whether under section 440.39(3)(a), the term "court costs" means "taxable costs" or whether that term means "all costs" incurred by the employee in preparing the claim against the third party, subject to the determination that the costs are reasonable. Jones maintains that the Second District erred in restricting costs to only taxable costs.
Section 440.39(3)(a), Florida Statutes provides in pertinent part as follows:
Upon suit being filed, the employer or the insurance carrier ... may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, which notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for the plaintiff's attorney. In determining the employer's or carrier's pro rata share of those costs and attorney's fees, the employer or carrier shall have deducted from its recovery a percentage amount equal to the percentage of the judgment or settlement which is for costs and attorney's fees. Subject to this deduction, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, 100 percent of what it has paid and future benefits to be paid, except, if the employee or dependent can demonstrate to the court that he did not recover the full value of damages sustained, the employer or carrier shall recover from the judgment or settlement, after costs and attorney's fees incurred by the employee or dependent in that suit have been deducted, a percentage of what it has paid and future benefits to be paid equal to the percentage that the employee's net recovery is of the full value of the employee's damages; provided, the failure by the employer or carrier to comply with the duty to cooperate imposed by subsection (7) may be taken into account by the trial court in determining the amount of the employer's or carrier's recovery, and such recovery may be reduced, as the court deems equitable and appropriate under the circumstances....
(Emphasis supplied.) This portion of the statute has remained unchanged since 1989.
Because "workers' compensation benefits are a creature of statute," our analysis of the meaning of court costs "must be based on statutory interpretation guided by this Court's prior case law interpreting the applicable statutes." City of Hollywood v. Lombardi, 770 So.2d 1196, 1200 (Fla.2000). A basic tenet of statutory interpretation is that a "statute should be interpreted to give effect to every clause in *915 it, and to accord meaning and harmony to all of its parts." Acosta v. Richter, 671 So.2d 149, 153-54 (Fla.1996). Accordingly, "statutory phrases are not to be read in isolation, but rather within the context of the entire section." Id. at 154. In other words, "[j]ust as a single word cannot be read in isolation, nor can a single provision of a statute.... A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." Smith v. United States, 508 U.S. 223, 233, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).
When all of the parts of section 440.39(3)(a) are considered together, the construction that is most consistent with the statutory language is that the term "all court costs" means "all costs," rather than merely taxable costs as the Second District concluded. Although "court costs" is not defined within section 440.39(3)(a), the term is used interchangeably within the same subsection with "costs." In addition, the statute specifically refers to "all court costs expended by the plaintiff" and "costs... incurred by the employee." These expansive provisions for costs are consistent with the interpretation of the term meaning "all costs."
The notion that costs, for the purposes of the equitable distribution formula, would be limited to taxable costs fails to take into account the limited nature of taxable costs. A prevailing party is entitled to recover from the losing party "all his or her legal costs and charges which shall be included in the judgment." § 57.041, Florida Statutes. The general rule is that only taxable costs are to be included in any cost judgment. See Kelly v. Militana, 595 So.2d 113, 115 (Fla. 3d DCA 1992); see also Mitchell v. Osceola Farms Co., 574 So.2d 1162, 1163 (Fla. 4th DCA 1991).[2]
On the other hand, for purposes of the determination of the equitable distribution formula, the starting point is the employee's net recovery. See generally Lombardi, 770 So.2d at 1200-02. Net recovery represents the gross recovery less attorney's fees and costs. If the term "court costs" were construed as limited to "taxable costs," the employee would be responsible for nontaxable costs and therefore the amount that the employee would receive would be less than his or her net recovery.[3] In addition, the statute's reference to "judgment or settlement" contemplates its applicability to settlements, whereas the term "taxable costs" refers to those items of costs that are recoverable against adverse parties after judgment.
Our prior case law, in fact, directly refutes the notion that court costs under the equitable distribution scheme are limited to taxable costs. In Baughman, the carrier brought an action for its pro rata share of the claimant's recovery against a third party tortfeasor. 78 So.2d at 695. The employee had secured a judgment against a third party tortfeasor that included taxable costs. The trial court, however, did not include court costs incurred but not taxed against the tortfeasor in assessing the carrier's pro rata share of court costs. *916 See id. Like the present statute, the 1951 version of the statute[4] that applied in Baughman also used the term "court costs."
The Court specifically distinguished between court costs incurred by the employee versus taxable costs assessed against the losing party:
We agree with the appellant with reference to the taxation against the appellee of its pro rata share of that part of the court costs which were not taxed against the defendant in this case.
The court allowed the appellant nothing at all on this portion of the costs and we think that was error. Although the judge could use his discretion in fixing the amount, we do not believe he was exercising it properly when he did not require the appellee to pay any part of the costs incurred by the appellant, above those paid by the defendant, when the appellee obviously benefitted from the recovery to the extent of the amount awarded it in the post trial proceedings.
Baughman, 78 So.2d at 696. Thus, in Baughman we held that the term "court costs" included more than just "taxable costs." The Second District's holding in Jones is in conflict with our decision in Baughman in that Jones limits court costs to taxable costs.
Although the equitable distribution statute has gone through a series of changes over the last twenty years, the term "court costs" within that statute has been unchanged since 1951.[5] The 1951 version provided that the employer/carrier's lien would attach to the employer/carrier's pro rata share of compensation benefits paid, based upon equitable distribution of the amount recovered "less their pro rata share of all court costs expended by the plaintiff." § 440.39(3)(a), Fla. Stat. (1951). Between 1974 and 1983 the equitable distribution concept was modified.[6] However, the Legislature returned an equitable distribution formula to the statute in 1983, which, like the present-day version of the statute, provided for allocation to the employer/carrier of its "pro rata share of all court costs expended by the plaintiff." § 440.39(3)(a), Fla. Stat. (1983). The legislative analysis accompanying adoption of the 1983 amendments explained:
Presently, if an employee brings a suit against a third-party tortfeasor for an *917 injury that resulted in workers' compensation being paid, the employer/carrier is entitled to reimbursement for 100 percent of compensation benefits paid. The employer/carrier does not share in the cost of the attorney's fees incurred by the claimant. The bill deducts from the reimbursement to the employer/carrier its pro rata share of the court costs and attorney's fees incurred by the employee. "Pro rata share" is defined as an amount equal to the percentage of the judgment which are costs and attorney's fees.
Fla. H.R. Comm. on Com., HB1277 (1983) Staff Summary 6 (final June 30, 1983) (emphasis supplied). Moreover, this Court has indicated that the effect of the 1983 change was to "provide that the `carrier's lien' must be reduced by its pro rata share of attorney's fees and expenses incurred to effectuate a recovery against third-party tortfeasors." Coon v. Continental Ins. Co., 511 So.2d 971, 973 (Fla.1987). Similarly, this Court has determined that the purpose of the 1983 amendments was "to take into consideration the worker's expenses in pursuing the third-party claim." Nikula v. Michigan Mut. Ins., 531 So.2d 330, 332 n. * (Fla.1988) (emphasis supplied), quoted in Manfredo v. Employer's Cas. Ins. Co., 560 So.2d 1162, 1165 (Fla. 1990).[7]
The history of legislative changes and specifically the addition of the "pro rata" language supports the equitable nature of the statute, which is more consistent with an interpretation that "all costs" are included. The term "court costs" as used in the equitable distribution statute has not been changed since our interpretation of that term in Baughman. As we explained in Lombardi, the "legislature is presumed to know the judicial constructions of a law when enacting a new version of that law" and "the legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in the new version." 770 So.2d at 1202. Further, the term "taxable costs" does not appear anywhere in the statute, nor has it ever.
Our interpretation of section 440.39(3)(a) is also consistent with the Third District's holding in Brandt v. Phillips Petroleum Co., 511 So.2d 1070 (Fla. 3d DCA 1987), disapproved in part by Manfredo, 560 So.2d at 1165, and the Fifth District's holding in Williams Heating & Air Conditioning Co. v. Williams, 551 So.2d 559, 560-61 (Fla. 5th DCA 1989). In Brandt, the Third District addressed the issue of whether, under section 440.39, the employer's share should be determined by using the net amount or the gross amount of recovery. Brandt referred to the costs available to be subtracted as "recovery costs". See 511 So.2d at 1074. Similarly, in Williams Heating, the First District referred to the costs included in the calculations under section 440.39(3)(a), as "costs of recovery." 551 So.2d at 561.
The Second District's reliance on McArthur Farms v. Peterson, 586 So.2d 1273 (Fla. 1st DCA 1991), is misplaced because that case involved an interpretation of a settlement agreement between an employee and a carrier and not the proper calculation of equitable distribution of a carrier's lien after an employee makes a recovery against a third-party *918 tortfeasor. In McArthur, the First District simply recognized the general rule that a prevailing party is entitled only to recover taxable costs rather than all costs and applied that rule to workers' compensation cases.
The Second District's opinion is inconsistent with the purpose of the equitable distribution statute because under the Second District's interpretation, all nontaxable costs would be borne by the claimant alone, rather than pro rata between the claimant and the employer or carrier. Under this interpretation of the equitable distribution scheme, the claimant would bear the burden of the expenses incurred in effecting a third-party recovery, which inures to the benefit of both the claimant and the employer/carrier. If the claimant obtained a judgment against the third-party tortfeasor and as prevailing party recovered his or her "taxable costs" from the tortfeasor, the claimant would have incurred additional costs beyond the taxable costs. The claimant's actual net recovery would be his or her gross recovery less attorney's fees and costs; however, under the Second District's interpretation, the actual costs incurred by the claimant could not be utilized in calculating net recovery for equitable distribution purposes.
In conclusion, we hold that the term "all court costs" when viewed within the totality of section 440.39(3)(a), is not limited to taxable costs. Of course, as Jones recognizes, nothing prevents the employer/carrier from challenging whether the costs are reasonable and the circuit court from determining whether the actual costs incurred are reasonable. The Second District's opinion is at odds with the actual language of the statute, is contradictory to the purpose of the equitable distribution scheme and stands in direct conflict with our opinion in Baughman. Accordingly, we quash the Second District's decision and we remand this case to the Second District for further proceedings consistent with this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and LEWIS, JJ., concur.
QUINCE, J., recused.
NOTES
[1] ETS raised two other issues on appeal, but the Second District summarily affirmed them and they are not raised on review here. These two other issues were: (1) whether the court improperly permitted counsel for the defendant in the underlying tort suit to testify as an expert on the value of the tort claim; and (2) whether the court improperly determined the full value of the tort claim. See ETS, 738 So.2d at 958-59.
[2] The Uniform Guidelines for Taxation of Costs in Civil Actions are used in assessing prevailing party costs under chapter 57, and limit recoverable costs to discrete items listed in the guidelines. See In re Statewide Unif. Guidelines for Taxation of Costs in Civil Actions, Admin. Order, Fla. Sup.Ct., 7 Fla. L. Weekly S517 (Fla. Oct. 28, 1981), reprinted in Florida Rules of Court 1625 (West 2001); see also, Reeser v. Boats Unlimited, Inc., 432 So.2d 1346, 1349 n. 2 (Fla. 4th DCA 1983).
[3] In Aetna Ins. Co. v. Norman, 468 So.2d 226, 228 (Fla.1985), this Court determined that the cap on the E/C's compensation lien was the employee's net recovery.
[4] The 1951 version provided in pertinent part: Upon suit being filed the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his dependents, which said notice shall be recorded and the same shall constitute a lien upon any judgment recovered to the extent that the court may determine to be their pro rata share for compensation benefits paid under the provisions of this law, based upon such equitable distribution of the amount recovered as the court may determine, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for plaintiff's attorney, such proration of court costs and attorney's fees to be made by the judge of the trial court upon application therefor and notice to adverse party.

§ 440.39(3), Fla. Stat. (1951).
[5] See Lombardi, 770 So.2d at 1200 (citing Reginald E. Wilcox, Determining and Satisfying Liens for Workers' Compensation Benefits, Fla. B.J., Apr. 1990 at 39). The evolution of this law is also traced in Paula F. Kelley, Third Party Actions and Subrogation in Florida Workers' Compensation Practice 8-1 (5th ed.1996).
[6] For example in 1977, the Legislature allowed a lien of 100 percent of the benefits paid after attorney's fees and costs were deducted. See § 440.39(3)(a), Fla. Stat. (1977). The 1979 version, section 440.39(3)(a), Florida Statutes (1979), provided that the E/C's lien applied to settlements along with judgments.
[7] The Legislature amended the statute in 1989 to remove the language regarding comparative negligence and limits of insurance coverage and collectibility, and instead provided for the lien formula used since that time. See § 440.39(3)(a), Fla. Stat. (1989). However, the 1989 amendments did not change the language related to the recovery of costs expended by the employee in pursuit of a successful recovery against a third-party tortfeasor.